**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Daniel D. Domenico**

Civil Action No. 1:26-cv-02361-DDD-CYC

JOSE LUIS RIERA LASTRE,

      Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the Aurora
    ICE Processing Center;
GEORGE VALDEZ, in his official capacity as Director of the Aurora
    Field Office of Enforcement and Removal Operations,
    U.S. Immigration and Customs Enforcement;
DAVID VENTURELLA, in his official capacity as Acting Director,
    U.S. Immigration and Customs Enforcement;
MARKWAYNE MULLIN, in his official capacity as Secretary,
    U.S. Department of Homeland Security;
TODD BLANCHE, in his official capacity as Attorney General of the
    United States,

      Respondents.[1]

---

**ORDER DENYING WRIT OF HABEAS CORPUS**

---

Petitioner Jose Luis Riera Lastre seeks a writ of habeas corpus directing his release from immigration detention or a bond hearing before an immigration judge. Doc. 1. The petition is denied as to his request for a writ directing release or a bond hearing. The petition is granted in part only to the extent that I conclude his detention is governed by 8 U.S.C. § 1226(a), and he is eligible for release on bond or conditional parole in the discretion of an authorized immigration officer.

---

[1]   To the extent that any of the original respondents has ceased to hold office during the pendency of this action, that party's successor "is automatically substituted as a party," and "any misnomer not affecting the parties' substantial rights must be disregarded." Fed. R. Civ. P. 25(d).

- 1 -

## BACKGROUND[2]

The petitioner is a native and citizen of Cuba. Doc. 1 at 2, 9, 19; Doc. 9 at 2; Doc. 9-1 at 1. He has no criminal record. Doc. 1 at 16, 19; Doc. 9-1 at 2. He entered the United States on August 4, 2023, by presenting himself at a port of entry, where he was inspected by immigration officers and then released into the country as a Cuban Humanitarian Parolee. Doc. 1 at 2, 9, 19; Doc. 1-2 at 16; Doc. 9 at 2, 3; Doc. 9-1 at 1-2; Doc. 12 at 2; *see also* U.S. Customs & Border Prot., *Get Most Recent I-94/I-95*, https://i94.cbp.dhs.gov/search/recent-search (last visited Aug. 12, 2026) (allowing search by Traveler Info).

The Cuban Parole Process allowed certain Cuban nationals to apply for advance authorization to travel to the United States to seek humanitarian parole into the country pursuant to 8 U.S.C. § 1182(d)(5) for a period of up to two years. *See* Implementation of a Parole Process for Cubans, 88 Fed. Reg. 1266-02 (Jan. 9, 2023). That two-year period would "enable individuals to seek . . . immigration benefits, including adjustment of status pursuant to the Cuban Adjustment Act,[3] . . . and to work and contribute to the United States." *Id.* at 1268. A Cuban Humanitarian Parolee who was not granted immigration benefits during the two-year period and did not depart the United States before expiration of his parole would be placed in removal proceedings after his parole period expired. *Id.*

---

2    In this Order, pinpoint citations to the record use the blue page number appended by the Court's Electronic Case Filing system at the top of each page, which may differ from a document's internal pagination.

3    The Cuban Adjustment Act allows Cubans who have been inspected and paroled into the United States to apply for adjustment to Lawful Permanent Resident status after being physically present in the country for at least one year. *See* 8 U.S.C. § 1255 note (Cuban Refugees; Adjustment of Status); *see also* Cuban Adjustment Act, Pub. L. No. 89-732, 80 Stat. 1161 (1966); 8 C.F.R. § 1245.2(a)(2)(ii).

The petitioner's parole had an expiration date of June 12, 2025. Doc. 1 at 2, 9, 19; Doc. 1-2 at 16; Doc. 9 at 2, 3; Doc. 9-1 at 1-3; Doc. 12 at 2. On August 16, 2024, the petitioner submitted to U.S. Citizenship and Immigration Services a Form I-485 application for adjustment to LPR status pursuant to the Cuban Adjustment Act. Doc. 1 at 2, 19; Doc. 1-2 at 9; Doc. 9-1 at 2. On October 4, 2024, the U.S. Department of Homeland Security announced that there was no "re-parole" process for Cuban Humanitarian Parolees and informed them that "if you have not sought a lawful status or period of authorized stay, you will need to leave the United States before your authorized parole period expires, or you may be placed in removal proceedings after your period of parole expires."[4] Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611-01, 13617 (Mar. 25, 2025). On March 25, 2025, DHS terminated the Cuban Parole Process entirely, along with other similar parole programs. *See id.* at 13611-22. The petitioner's LPR application was still pending when his parole expired, and it remains pending.[5] Doc. 1 at 2. The petitioner did not depart the

---

[4]    The lack of a dedicated re-parole process for Cuban Humanitarian Parolees did not preclude the petitioner from applying for a new period of parole under the standard humanitarian parole process. *See* U.S. Citizenship & Immigr. Servs., *Humanitarian or Significant Public Benefit Parole for Aliens Outside the United States: Re-Parole*, https://www. uscis.gov/humanitarian/humanitarian_parole (last updated Dec. 15, 2025) ("[A]n individual may request a new period of parole, also known as re-parole, from within the United States.").

[5]    On December 2, 2025, USCIS placed a hold on all LPR applications for noncitizens from Cuba and certain other countries. *See* U.S. Citizenship & Immigr. Servs., PM-602-0192, *Policy Memorandum re: Hold and Review of All Pending Asylum Applications and all USCIS Benefit Applications Filed by Aliens from High-Risk Countries* (Dec. 2, 2025), https://www.uscis.gov/sites/default/files/document/policy-alerts/PM-602-0192-PendingApplicationsHighRiskCountries-20251202.pdf (citing Proclamation No. 10949, 90 Fed. Reg. 24497 (June 4, 2025)). On June 12, 2026, pursuant to a court order, USCIS began treating that adjudicative hold "as if [it is] not in effect," "pending possible further

United States before expiration of his parole (though if he had done so, he would have risked his LPR application being deemed abandoned, *see* 8 C.F.R. § 1245.2(a)(4)(ii)(B)).

On April 28, 2026, DHS arrested the petitioner and issued a Notice to Appear, initiating removal proceedings under 8 U.S.C. § 1229a. Doc. 1 at 2, 19; Doc. 1-2 at 11-14, 16-17; Doc. 9 at 3; Doc. 9-1 at 1, 2. The arrest warrant was issued "[f]ollowing ICE records checks review verifying the subject did not have documents to be or remain in the US and subject overstayed his parole status." Doc. 9-1 at 2. The Notice to Appear classifies the petitioner as an "arriving alien." Doc. 1-2 at 11. The petitioner has remained in detention since that time, pending adjudication of his LPR application by USCIS and completion of his removal proceedings in immigration court.[6] Doc. 1 at 2, 19; *see also* Doc. 1-2 at 3, 5-6.

The petitioner contends that he is being detained without a bond hearing in violation of the Immigration and Nationality Act, the INA's implementing regulations, and his due-process rights. Doc. 1 at 19-22.

---

judicial review." *See* U.S. Citizenship & Immigr. Servs., *Court Order on Hold Policies*, https://www.uscis.gov/newsroom/alerts/court-order-on-hold-policies (June 12, 2026); *Dorcas Int'l Inst. of R.I. v. USCIS*, — F. Supp. 3d —, No. 26-cv-132-JJM-PAS, 2026 WL 1622708 (D.R.I. June 5, 2026), *appeal docketed*, No. 26-1703 (1st Cir. filed June 12, 2026).

[6] Because the petitioner falls within the regulatory definition of "arriving alien," jurisdiction over his LPR application remains with USCIS, not the immigration court. *See* 8 C.F.R. §§ 1245.2(a)(1)(ii), 245.2(a)(1); *Britkovyy v. Mayorkas*, 60 F.4th 1024, 1026-27 (7th Cir. 2023) ("Britkovyy is an arriving alien because he was paroled into the United States, so by regulation, only USCIS, not the immigration courts, can adjust his status.").

## APPLICABLE LAW

### I. Habeas Corpus

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief may be granted if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts have habeas jurisdiction to hear statutory and constitutional challenges to immigration detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001); *Sierra v. INS*, 258 F.3d 1213, 1217-18 (10th Cir. 2001).

### II. Statutory Framework Governing Immigration Detention

While removal proceedings are being adjudicated, a noncitizen may be detained pursuant to either 8 U.S.C. § 1225 or 8 U.S.C. § 1226. *See Jennings v. Rodriguez*, 583 U.S. 281, 287-89 (2018).

Section 1225 applies to "applicants for admission," which the statute defines as an "alien present in the United States who has not been admitted or who arrives in the United States[, ]whether or not at a designated port of arrival."[7] 8 U.S.C. § 1225(a)(1). "Admitted" and "admission" mean "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer," 8 U.S.C.

---

[7]  The statutory phrase "alien . . . who arrives in the United States" is not coextensive with the regulatory definition of "arriving alien," which is "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. §§ 1.2, 1001.1(q); *In re Q. Li*, 29 I. & N. Dec. 66, 68 n.2 (B.I.A. 2025).

§ 1101(a)(13)(A), not simply physical entry into the country. *See United States v. Gaspar-Miguel*, 947 F.3d 632, 633-34 (10th Cir. 2020) (discussing history of INA and distinction between "entry" and "admission"); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1234, 1239 (10th Cir. 2026) (same).

Under Section 1225(b)(1), applicants for admission "arriving in the United States" and applicants for admission who have not been paroled into the United States and have not been present in the country for at least two years are subject to expedited removal proceedings if an immigration officer determines they are inadmissible on certain grounds, and they may be ordered removed "without further hearing or review" unless they demonstrate a credible fear of persecution.[8] 8 U.S.C. § 1225(b)(1)(A)-(B); *see also Thuraissigiam*, 591 U.S. at 107-11. Applicants for admission in expedited removal proceedings are subject to mandatory detention while those proceedings are pending. 8 U.S.C. § 1225(b)(1)(B)(ii) & (iii)(IV); *see also Jennings*, 583 U.S. at 302; *Thuraissigiam*, 591 U.S. at 111.

Under Section 1225(b)(2), in the case of all other applicants for admission, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be

---

[8]    Those "arriving in the United States" are automatically subject to expedited removal if they are inadmissible on one of the specified grounds, while those who have been present in the United States for less than two years may be subject to expedited removal in the discretion of the Secretary of Homeland Security. 8 U.S.C. § 1225(b)(1)(A)(i) & (iii)(I)-(II); *see also DHS v. Thuraissigiam*, 591 U.S. 103, 109 & n.3 (2020); 6 U.S.C. §§ 251(2), 557; 8 C.F.R. § 235.3(b)(1)(ii). Not all noncitizens subject to expedited removal are in fact placed in such proceedings, and the Government has discretion to place them in standard removal proceedings under 8 U.S.C. § 1229a even if expedited removal could be applied to them. *Flores v. Barr*, 934 F.3d 910, 917 (9th Cir. 2019) (citing *In re E-R-M*, 25 I. & N. Dec. 520, 521-22 (B.I.A. 2011)).

admitted," the alien is subject to mandatory detention during the pendency of standard removal proceedings under Section 1229a. 8 U.S.C. § 1225(b)(2)(A); *see also* 8 C.F.R. § 235.3(b)(1)(ii). The phrase "seeking admission" has independent force separate from the defined term "applicant for admission." *Santillan Quiroz*, 180 F.4th at 1237-39, 1240-42. "[A] noncitizen is 'seeking admission' when he takes some kind of ongoing action to request lawful entry into the United States," in other words, if he has some "present request" for lawful entry that "remains open or ongoing." *Id.* at 1238. "Entry" means "passage into the country from abroad." *Id.* at 1239 (quoting *Medina-Rosales v. Holder*, 778 F.3d 1140, 1145 (10th Cir. 2015)). So a noncitizen who has "entered the United States without admission and [has] lived here since [is] categorically unable to seek admission while [he] remain[s] in the country," because a "person cannot make a present request for permission to enter the United States, lawfully or otherwise, once he or she has already entered." *Id.* "The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border." *Id.*

Mandatory detention under Section 1225(b) therefore is generally limited to applicants for admission who are detained at the border. *Id.* at 1237 & n.6, 1239-40, 1245-48. Applicants for admission subject to mandatory detention under Section 1225(b)(1) or (b)(2) may be released on "humanitarian" parole in the discretion of the Secretary of Homeland Security, but they are not entitled to a bond hearing before an immigration judge. *See* 8 U.S.C. § 1182(d)(5)(A) (Secretary may "parole into the United States . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission"); *Biden v. Texas*, 597 U.S. at 806-07 (discussing humanitarian parole); *Jennings*, 583 U.S. at 297-98, 300 (no bond hearing). Noncitizens who are released on humanitarian parole may be eligible for adjustment to

LPR status without the necessity of leaving the country, as well as certain other benefits. *See Texas v. DHS*, 756 F. Supp. 3d 310, 324-25 (E.D. Tex. 2024); *Carbajal v. Wimmer*, No. 2:26-cv-00093, 2026 WL 353510, at *2 to *3 (D. Utah Feb. 9, 2026).

With the exception of applicants for admission who entered without inspection and have been present for less than two years, *see* 8 U.S.C. § 1225(b)(1)(A)(iii), noncitizens who have entered the United States and are thereafter arrested in the interior of the country may only be detained pursuant to Section 1226. *Santillan Quiroz*, 180 F.4th at 1237 & n.6, 1246-48, 1251 n.13. Section 1226(a) applies to noncitizens arrested "[o]n a warrant," who may then be "detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Both applicants for admission and admitted noncitizens who are removable on various grounds—for example, someone who was admitted on a visa that has since been revoked—may be arrested under Section 1226(a) and detained pending removal proceedings under Section 1229a. *See Santillan Quiroz*, 180 F.4th at 1246-47; 8 U.S.C. § 1227(a) (defining classes of admitted deportable aliens). Except for certain criminal noncitizens, those who are arrested and detained under Section 1226(a) may be released on bond or "conditional" parole if such release would not pose a danger to property or persons and the noncitizen is likely to appear for future proceedings, and they are generally entitled to a bond hearing before an immigration judge.[9] 8 U.S.C. § 1226(a) & (c); 8 C.F.R. §§ 236.1, 1236.1; *see also Jennings*, 583 U.S. at 306; *Johnson v. Guzman Chavez*, 594 U.S. 523, 527 & n.2 (2021).

---

[9] Conditional parole under Section 1226(a)(2)(B) does not confer the same benefits as humanitarian parole under Section 1182(d)(5), such as eligibility for adjustment to LPR status. *Cruz-Miguel v. Holder*, 650 F.3d 189, 193 (2d Cir. 2011) (collecting cases); *Texas v. DHS*, 756 F. Supp. 3d at 355; *In re Castillo-Padilla*, 25 I. & N. Dec. 257 (B.I.A. 2010), *aff'd*, 417 F. App'x 888 (11th Cir. 2011).

Certain criminal noncitizens are subject to mandatory detention under Section 1226(c) while their removal proceedings are pending and may not be released on bond, conditional parole, or humanitarian parole. 8 U.S.C. § 1226(a) & (c)(4).

## DISCUSSION

### III. The petitioner is not entitled to a bond hearing under the INA and its implementing regulations.

#### A.   Section 1226(a) governs the petitioner's detention.

The petitioner contends that he may only be detained under Section 1226(a). The respondents contend that the humanitarian parole statute, 8 U.S.C. § 1182(d)(5), requires that the petitioner be "returned to the custody from which he was paroled," which they say is mandatory detention under Section 1225(b)(2)(A). The petitioner has the better of these arguments.

The humanitarian parole statute provides that when parole is terminated, a noncitizen "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). The accompanying regulation provides that upon termination of parole, a noncitizen "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(1)-(2). So the questions here are: what does it mean to "restore[] [the petitioner] to the status that he . . . had at the time of parole," what is "the custody from which he was paroled," and how would the detention of "any other applicant for admission" in his position be "dealt with"? *See Clark v. Martinez*, 543 U.S. 371, 385-86 (2005) ("The manner in which the [detention] of any other applicant would be 'dealt with' beyond the 90-day removal period is prescribed by [8 U.S.C.] § 1231(a)(6) . . . .").

The respondents contend that the petitioner's status must be re-stored to that of an applicant for admission who is seeking admission, and that the custody from which he was paroled is mandatory detention under Section 1225(b)(2)(A). But even assuming that the humanitarian parole statute and its accompanying regulation operate in the way the respondents assert (a contention with which the weight of district courts have disagreed),[10] the respondents are incorrect that the petitioner here is or ever was seeking admission. As discussed above, the petitioner ar-rived at a port of entry pursuant to an advance authorization to travel to the United States for the purpose of seeking humanitarian parole. *See* Implementation of a Parole Process for Cubans, 88 Fed. Reg. at 1268, 1272, 1275-77 (approved beneficiaries will receive "advance au-thorization to travel to the United States to seek a discretionary grant of parole"). Humanitarian parole "is not an admission of the individual

---

[10] *See, e.g.*, *Capote Zamora v. Mullin*, No. 26-cv-00538-PAB, 2026 WL 1026810, at *2 to *3 (D. Colo. Apr. 16, 2026); *Abdyrakhmanov v. Balta-zar*, No. 26-cv-01875-NYW, 2026 WL 1800941, at *3 to *6 (D. Colo. June 23, 2026); *Arevalo Castillo v. Figueroa*, No. CIV-26-0162-HE, 2026 WL 1960937, at *1 (W.D. Okla. July 7, 2026); *Sananes Hernandez v. Leyva*, No. 4:26-cv-00054-DN, 2026 WL 1948965, at *9 (D. Utah July 6, 2026); *Duzaeu v. Gantt*, No. CIV-26-1214-SLP, 2026 WL 2199349, at *3 n.7 (W.D. Okla. July 30, 2026) (R. & R.); *but see, e.g.*, *Perez Rivas v. Bal-tazar*, No. 1:25-cv-03981-DDD-CYC, slip op. at 10-11 (D. Colo. June 15, 2026), ECF No. 15; *Depelian v. Baltazar*, No. 1:25-cv-03765-SKC-TPO, slip op. at 8-9 (D. Colo. Jan. 20, 2026), ECF No. 18; *Fuenmayor v. Mul-lin*, 830 F. Supp 3d 1104, 1106-09 (D.N.M. 2026), *appeal docketed*, No. 26-2063 (10th Cir. filed Apr. 28, 2026); *Ihor B. v. Regalado*, No. 26-cv-420-JDR-SH, 2026 WL 2043198, at *7 (N.D. Okla. July 15, 2026) (cit-ing *Q. Li*, 29 I. & N. Dec. at 69-70). I note that though I previously held that a humanitarian parolee returned to his status as an arriving alien and applicant for admission subject to mandatory detention under Sec-tion 1225(b)(2)(A) upon termination of his parole, *Perez Rivas*, slip op. at 8-11, that was before the Tenth Circuit issued its opinion in *Santillan Quiroz*, which holds that the phrase "seeking admission" in Sec-tion 1225(b)(2)(A) has independent force separate from the defined term "applicant for admission," 180 F.4th at 1237-39, 1240-42.

- 10 -

to the United States." *Id.* at 1272 (citing 8 U.S.C. §§ 1101(a)(13)(B), 1182(d)(5)(A)); *accord Blanche v. Lau*, 146 S. Ct. 1981, 1987 (2026) ("Parole allows an alien to physically enter the United States without being admitted."). So when the petitioner arrived at a port of entry, he was not seeking admission; he was only seeking physical entry in the form of parole, presumably so that he could apply for adjustment to LPR status under the Cuban Adjustment Act after being physically present in the country for a year. And "[t]he concept of admission 'does not encompass a *post-entry* adjustment of status.'" *Santillan Quiroz*, 180 F.4th at 1239 (quoting *Medina-Rosales*, 778 F.3d at 1145); *cf. Mullin v. Al Otro Lado*, 146 S. Ct. 2079, 2093 n.8 (2026) (some noncitizens "wish to apply [for lawful status] when they arrive in the country[,] [b]ut certain aliens may apply only well after they enter"). Because the petitioner was not seeking admission when he arrived, he cannot be "restored" to that status, and Section 1225(b)(2)(A) cannot be "the custody from which he was paroled."

The respondents also argue that because regulations provide that the petitioner remains an "arriving alien" "even if paroled pursuant to [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked," 8 C.F.R. §§ 1.2, 1001.1(q), he should be treated as if he is still seeking entry at the border, and thus seeking admission. The respondents are correct that the petitioner is classified as an arriving alien under the regulations. *See id.*; *Duarte v. Mayorkas*, 27 F.4th 1044, 1059-60 (5th Cir. 2022) ("[A] parolee normally fits the regulatory definition of an 'arriving alien' . . . even if, in actuality, a paroled alien has already physically come into the United States."); *Zheng v. Gonzales*, 422 F.3d 98, 110-11 (3d Cir. 2005) ("the term 'arriving alien' . . . encompasses not only aliens who are actually at the border, but also aliens who were paroled after their arrival"). But it does not follow that he must be treated as if he is still seeking to effect physical passage into the United States when

- 11 -

assessing whether he is seeking admission within the meaning of Section 1225(b)(2)(A).[11] The Tenth Circuit has rejected an interpretation of Section 1225(b)(2)(A) that would "treat[] noncitizens as seeking admission solely based on their status as applicants for admission, [and] not on any action that they do or do not take." *Santillan Quiroz*, 180 F.4th at 1244 n.10. By the same logic, the petitioner should not be treated as seeking physical entry at the border solely based on his regulatory status as an arriving alien, when he has already entered and been living in the interior of the country for years. *See Sananes Hernandez*, 2026 WL 1948965, at *7, *9 (humanitarian parolee retained status as "arriving alien" but was no longer "seeking admission" after living freely within the United States for two years while on parole and for over a year further after parole expired). Because the petitioner has already entered, he is "categorically unable to seek admission while [he] remain[s] in the country." *Santillan Quiroz*, 180 F.4th at 1239.

The petitioner's case must "continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). And the manner in which the detention of any other applicant for admission who is not in expedited removal

---

[11] The respondents do not argue that by virtue of being an "arriving alien" under the regulations, the petitioner is necessarily "arriving in the United States" within the meaning of Section 1225(b)(1)(A)(i) and thus subject to expedited removal procedures and mandatory detention under Section 1225(b)(1). Many courts have rejected that proposition. *See, e.g.*, *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 305-08 (E.D.N.Y. 2025); *Coal. for Humane Immigrant Rts.*, 805 F. Supp. 3d 48, 87, 89-94 (D.D.C. 2025), *vacated on other grounds*, — F.4th —, No. 25-5289, 2026 WL 2317908 (D.C. Cir. Aug. 11, 2026) (vacating preliminary injunction for lack of standing because plaintiffs had not sought to enjoin Government's reliance on regulatory definition of arriving alien as basis for subjecting parolees to expedited removal); *Torrez Arce v. Blanche*, No. 9:26-cv-501 (ECC), 2026 WL 1430509, at *2 to *4 (N.D.N.Y. May 21, 2026); *Qasemi v. Francis*, No. 25-cv-10029 (LJL), 2025 WL 3654098, at *5 to *7, *9 (S.D.N.Y. Dec. 17, 2025).

proceedings under Section 1225(b)(1) and is not seeking admission within the meaning of Section 1225(b)(2)(A) would be dealt with is prescribed by Section 1226. *See Santillan Quiroz*, 180 F.4th at 1237 & n.6, 1251 n.13.

### B. The petitioner is not entitled to a bond hearing under Section 1226(a) and its regulations because he is an arriving alien in removal proceedings.

The fact that Section 1226(a) governs the petitioner's detention is, however, not the end of the inquiry. Section 1226(a) provides that, except for certain criminal aliens (which the petitioner is not), the Attorney General "(1) may continue to detain [an] arrested alien; and (2) may release the alien on—(A) bond . . . or (B) conditional parole." 8 U.S.C. § 1226(a). That decision is entrusted to the Attorney General's "discretionary judgment." 8 U.S.C. § 1226(e). And the statute says nothing about bond hearings. *See Jennings*, 583 U.S. at 306. The provision for bond hearings is found in the regulations that DHS and the U.S. Department of Justice have promulgated. *Id.* ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1))). And those regulations provide that an immigration judge does not have jurisdiction to conduct a bond hearing for an arriving alien who is in removal proceedings, like the petitioner here.

The regulations provide that for noncitizens detained under Section 1226(a), designated DHS officers may, in their discretion, release a noncitizen not subject to mandatory detention under Section 1226(c) on bond or conditional parole "provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(b)(1) & (c)(8), 1236.1(b)(1) & (c)(8); *see also* 8 C.F.R. § 287.5(e)(2); *Guzman Chavez*, 594 U.S. at 527. A

- 13 -

noncitizen generally may appeal that initial custody determination to an immigration judge, and may appeal the immigration judge's custody redetermination to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d), 1236.1(d); *Guzman Chavez*, 594 U.S. at 527-28. But an immigration judge "may not exercise the authority" to redetermine custody, "and the [appeals] process . . . shall not apply, with respect to any alien beyond the custody jurisdiction of the immigration judge as provided in [8 C.F.R. § 1003.19(h)]." 8 C.F.R. §§ 236.1(c)(10)-(11), 1236.1(c)(10)-(11). That regulation in turn provides that "an immigration judge may not redetermine conditions of custody imposed by [DHS] with respect to . . . [a]rriving aliens in removal proceedings, including aliens paroled after arrival pursuant to [8 U.S.C. § 1182(d)(5)]." 8 C.F.R. § 1003.19(h)(2)(i)(B).

Under the regulations, the petitioner was classified as an arriving alien upon his arrival at a port of entry, and he remained an arriving alien while he was paroled and after his parole was terminated. *See* 8 C.F.R. §§ 1.2, 1001.1(q). And DHS has initiated removal proceedings against him under Section 1229a. He is therefore an "arriving alien in removal proceedings," and an immigration judge may not redetermine his custody. *See* 8 C.F.R. § 1003.19(h)(2)(i)(B); *Sidhu v. Chertoff*, No. 1:07-cv-00947-LJO-TAG-HC, 2009 WL 900734, at \*5 to \*7 (E.D. Cal. Mar. 31, 2009) (R. & R.) ("[A]n Immigration Judge does not have jurisdiction to conduct a bond hearing regarding an arriving alien such as Petitioner."), *adopted by* slip op. (E.D. Cal. May 8, 2009), ECF No. 26; Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01, 10323 (Mar. 6, 1997) ("[I]nadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not."); *In re X-K-*, 23 I. & N. Dec. 731, 732, 735 (B.I.A. 2005) ("There is no question that

- 14 -

Immigration Judges lack jurisdiction over arriving aliens who have been placed in [8 U.S.C. § 1229a] removal proceedings, because they are specifically listed at 8 C.F.R. § 1003.19(h)(2)(i)(B) as one of the excluded categories."), *overruled on other grounds by In re M-S-*, 27 I. & N. Dec. 509 (B.I.A. 2019); *accord In re Oseiwusu*, 22 I. & N. Dec. 19, 20 (B.I.A. 1998).

The petitioner is therefore limited to "seeking a redetermination of custody conditions by [DHS]," 8 C.F.R. § 1003.19(h)(2)(ii),[12] and he is not entitled to a bond hearing before an immigration judge under the terms of the INA and its regulations.[13]

## IV. The petitioner's detention does not violate procedural due process.

The Due Process Clause does not provide applicants for admission like the petitioner a liberty interest in being released on bond or parole as a matter of procedural due process. *See Sierra*, 258 F.3d at 1218 & n.3 (citing *Ho v. Greene*, 204 F.3d 1045, 1060 & n.9 (10th Cir. 2000), *abrogated in part on other grounds by Zadvydas*, 533 U.S. 678); *accord Thuraissigiam*, 591 U.S. at 139-40 (applicants for admission, "even those paroled elsewhere in the country for years pending removal," are "'treated' for due process purposes 'as if stopped at the border'" (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953))). The petitioner is "entitled only to the process Congress has conferred on

---

[12] He might also be eligible to seek re-parole. *See supra* note 4.

[13] The petitioner argues that I should order his immediate release because his previous release on parole necessarily required DHS to find that he is "neither a security risk nor a risk of absconding," 8 C.F.R. § 212.5(b), and "no circumstances have changed since [his] prior parole," so "Respondents thus have no grounds to make a different determination now than was made then." Doc. 1 at 16-17, 17-18, 22. But at least two circumstances have changed: the petitioner overstayed his parole and did not depart the United States before it expired, and the petitioner is now in removal proceedings.

him by statute." *Espinoza v. Ceja*, No. 1:25-cv-01120-GPG, 2025 WL 4957947, at \*9 (D. Colo. May 21, 2025) (citing *Mezei*, 345 U.S. at 212; *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950); *Sierra*, 258 F.3d at 1218); *accord Aguilera v. Kirkpatrick*, 241 F.3d 1286, 1292-93 (10th Cir. 2001) (beyond basic right to "fundamental fairness" of removal proceedings, "any alleged liberty interest must be created by statute or regulation"); *Singh v. Baltazar*, No. 1:26-cv-01076-DDD-TPO, 2026 WL 1282828, at \*5 to \*6 (D. Colo. May 11, 2026).

As discussed above, under Section 1226(a), which is the statute that governs the petitioner's detention here, he may seek a custody redetermination by an authorized DHS officer, but he is not entitled to a bond hearing before an immigration judge. The petitioner has received the process Congress established for noncitizens in his circumstances,[14] and that is all the process to which he was entitled.[15] *Cf. Sierra*, 258 F.3d

---

[14]   When the petitioner's parole expired on June 12, 2025, it automatically terminated with no written notice required. 8 C.F.R. § 212.5(e)(1) ("Parole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized."). And even if that had not occurred, the Notice to Appear that was served on the petitioner the same day he was arrested constituted written notice that his parole was terminated. 8 C.F.R. § 212.5(e)(2)(i) ("When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified."); *see also* 8 C.F.R. § 244.1 (Notice to Appear is "charging document").

[15]   Though he has received the required process with respect to termination of his parole, it appears that he has not received an initial custody determination under 8 C.F.R. §§ 236.1(c)(8) & 1236.1(c)(8) because the respondents have been erroneously subjecting him to mandatory detention under Section 1225(b)(2)(A). Because I have concluded that his detention is governed by Section 1226(a), he is eligible to seek such a determination now. He has not exhausted his available administrative remedies with respect to any habeas claim that might be premised on a custody determination under those regulations or a redetermination under 8 C.F.R. § 1003.19(h)(2)(ii). *Cf. Doe v. Bondi*, 1:25-cv-02712-DDD-SBP, 2025 WL 3516292, at \*6 to \*7 & nn.10-12.

at 1218-20 (procedural due process satisfied where "[n]either the statutes nor the governing regulations require[d] a hearing on parole withdrawal"); *Singh*, 2026 WL 1282828, at *6 to *7 ("In this context, where the petitioner has not argued or demonstrated that he was not given the process afforded to him by Congress, his 'previous release from detention . . . [does not] change the analysis.'" (quoting *Kanda v. Cole*, 830 F. Supp. 3d 659, 664 (S.D. Tex. 2026))).

The petitioner is therefore not entitled to habeas relief on the basis that his detention violates procedural due process.

## V. The petitioner's detention does not violate substantive due process.

The fact that the petitioner has no liberty interest in procedural due process beyond the statutory procedures afforded by Congress does not foreclose a substantive due-process claim challenging the justification supporting his detention. *Sierra*, 258 F.3d at 1218 n.3; *see also Santillan Quiroz*, 180 F.4th at 1249-50 & n.12; *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1385-87 (10th Cir. 1981). A noncitizen's substantive due-process rights may be violated if immigration detention becomes punitive. *See Rodriguez-Fernandez*, 654 F.2d at 1387 ("[A]n excluded alien in physical custody within the United States may not be 'punished' without being accorded the substantive . . . due process guarantees of the Fifth Amendment."). But "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." *United States v. Salerno*, 481 U.S. 739, 746 (1987). A restriction on liberty is punitive rather than regulatory if (a) the government intends to impose punishment, or (b) the restriction is not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to that purpose. *Id.* at 747; *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015).

- 17 -

Neither of those is true here. The petitioner provides no evidence or argument of intent to punish on the part of the Government. *See Gisbert v. U.S. Att'y Gen.*, 988 F.2d 1437, 1442 n.8 (5th Cir. 1993) ("detention pending removal and stemming from exclusion proceedings is not intended as punishment"). And because I have concluded that Section 1226(a) governs the petitioner's detention, he is not subject to the categorical mandatory detention that the *Santillan Quiroz* court found raises constitutional concerns. *See* 180 F.4th at 1249-50. Rather, he is eligible to seek a custody determination or redetermination by an authorized DHS officer and may be released on bond or conditional parole if it is determined that he is not a flight risk or a danger. And "to facilitate deportation, or to protect against risk of flight or dangerousness" are rational, nonpunitive purpose for detention.[16] *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).

The petitioner is therefore not entitled to habeas relief on the basis that his detention violates substantive due process.

## CONCLUSION

It is **ORDERED** that:

The Court's Order to Show Cause, Doc. 4, is **DISCHARGED**, and the Petition for Writ of Habeas Corpus, **Doc. 1**, is **GRANTED IN PART** to the extent that I conclude Petitioner Jose Luis Riera Lastre's

---

[16] The petitioner does not argue that his detention has become punitive because it has been unreasonably prolonged, nor could he succeed on such an argument. He has been detained for approximately three-and-a-half months, and there is no indication in the record of any unreasonable or bad-faith delay by the Government in his removal proceedings. *See Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the [Government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation . . . but to incarcerate for other reasons.").

- 18 -

detention is governed by 8 U.S.C. § 1226(a) and he is eligible for release on bond or conditional parole in the discretion of an authorized immigration officer, and is otherwise **DENIED** and **DISMISSED WITHOUT PREJUDICE**;

The petitioner's Motion to Issue Decision on Pending Petition for Writ of Habeas Corpus in the Interests of Justice, **Doc. 15**, is **DENIED AS MOOT**;

Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is **DIRECTED** to substitute David Venturella, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement, in place of Respondent Todd M. Lyons; and

The Clerk of Court is **FURTHER DIRECTED** to enter final judgment and close this case.

DATED: August 14, 2026          BY THE COURT:

Daniel D. Domenico
Chief United States District Judge

- 19 -